NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Brucestan T. JORDAN,<br><br>        Plaintiff,<br><br>v.<br><br>Edmond C. CICCHI, et al.,<br><br>        Defendants. | Civ. No. 08-06088 |
| Brucestan T. JORDAN,<br><br>        Plaintiff,<br><br>v.<br><br>THE STATE OF NEW JERSEY, et al.,<br><br>        Defendants. | Civ. No. 10-04398<br><br>OPINION |

THOMPSON, U.S.D.J.

      This matter comes before the Court by way of Plaintiff Brucestan T. Jordan's ("Plaintiff's") Motion for a Temporary Restraining Order ("TRO") in the above-captioned cases. (Civ. No. 08-06088, Doc. No. 98; Civ. No. 10-04398, Doc. No. 53). In both instances, the motion is opposed. (Civ. No. 8-06088, Doc. No. 99; Civ. No. 10-04398, Doc. No. 54). After consideration of the written submissions of the parties, the Court has decided the motion without

oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons included herein, Plaintiff's motion is denied.

## BACKGROUND

Both of the underlying cases in this action concern alleged constitutional violations by certain state actors and other individuals involved in the New Jersey state criminal justice system.  (*See* generally, Docket for Civ. No. 08-06088; Docket for Civ. No. 10-04398).  The factual circumstances relevant to the present motion stem from Plaintiff's May 15, 2013 arrest and incarceration in the Middlesex County Department of Corrections ("Corrections") for refusing to cooperate in an ongoing state court proceeding.  (Civ. No. 08-06088, Doc. No. 98, ¶ 1; Civ. No. 10-04398, Doc. No. 53, ¶ 1).  In the five days following his incarceration, Plaintiff alleges that Defendants[1]: (1) violated N.J.A.C. Title 10A and the Eighth Amendment by failing to provide him with clean towels with which to shower; (2) engaged in retaliation and cruel and unusual punishment in violation of the First and Eighth Amendments by forcibly injecting Plaintiff with a TB "test" shot over Plaintiff's allergy objections; and (3) denied Plaintiff access to the law library and to the grievance process.  (*See generally*, Civ. No. 08-06088, Doc. No. 98; Civ. No. 10-04398, Doc. No. 53).

On May 20, 2013, Plaintiff wrote the above allegations into the present motion for a TRO, seeking removal from the custody of Corrections and any other facility under control of Edmund C. Cicchi and the County of Middlesex, and seeking release on his own recognizance. (Civ. No. 08-06088, Doc. No. 98; Civ. No. 10-04398, Doc. No. 53).  Defendants have opposed, (Civ. No. 8-06088, Doc. No. 99; Civ. No. 10-04398, Doc. No. 54), and the Court now decides.

---

[1] With respect to Civ. No. 08-06088, the only remaining Defendants against whom Plaintiff may bring claims are Clint P. Giles and Officer Nortesane.  With respect to Civ. No. 10-04398, the only remaining Defendants are Wardon Edmond Cicchi and Brian J. Fenyak.  Thus, the term "Defendants" in this opinion refers to these four.

DISCUSSION

As noted in previous opinions issued by this Court, Plaintiff has had a long history of litigating against Defendants in federal court in an effort to disrupt the ongoing state criminal proceedings against him. *see, e.g.*, *Jordan v. Superior Court of New Jersey*, Civ. No. 09-3187. With regards to the present cases, Plaintiff's previous attempts to seek release from state imprisonment or to have this Court intervene in state court proceedings include a January 25, 2012 "Emergency Motion" for a preliminary injunction, (Civ. No. 08-06088, Doc. No. 63; Civ. No. 10-04398, Doc. No. 24), and a petition for a writ of mandamus requesting that this Court void any and all previous and/or future court orders issued by the Superior Court of New Jersey, (Civ. No. 10-cv-4398, Doc. No 14). All of these efforts have been, to date, denied. (*See, e.g.*, Civ. No. 08-06088, Doc. No. 66; Civ. No. 10-04398, Doc. Nos. 17, 32). Upon evaluation of Plaintiff's latest petition, the Court again finds that multiple considerations support the motion's denial, both with regards to the general principle that federal courts should not interfere in state court adjudications, and on the merits of the TRO application itself.

To start, this TRO motion appears to be yet another thinly disguised effort to disrupt Plaintiff's state court prosecution. In considering such action, the Court turns to the well-worn axiom that a district court should not interfere with state court criminal proceedings absent extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37 (1971) (quoting *Fenner v. Boykin*, 271 U.S. 240 (1926)). Releasing or removing Plaintiff from the custody of Corrections would no doubt constitute such interference, as it would contravene the state court's ability to hold Plaintiff in contempt and advance the state litigation toward its conclusion. Moreover, while Plaintiff in his moving papers has alleged certain hardships, none are so extraordinary as to justify interference.

Even absent specific discouragement to interfere in state criminal proceedings, the Court observes that district courts are otherwise permitted to abstain from hearing claims whose resolution might result in interference with state proceedings when (1) the state proceedings are ongoing and judicial in nature; (2) "the state proceedings implicate important state interests;" and (3) "the state proceedings afford an adequate opportunity to raise federal claims." *Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009) (citing to *Younger*, 401 U.S. 37). As here there is undoubtedly an ongoing state proceeding which, as a criminal matter, implicates important state interests, and given that Plaintiff has the opportunity to raise the same claims alleged here in state court (even if not technically within the same proceeding), the Court finds the policy of abstention persuasive in this instance.

Finally, with regards to the merits of the TRO application itself, the Court finds that it would not grant Plaintiff the relief he seeks even without the general policy of noninterference. When considering a motion for a TRO, the Court must analyze: (1) the likelihood of success on the merits; (2) the probability of irreparable injury to the moving party in the absence of such relief; (3) the possibility of harm to the non-moving party if relief is granted; and (4) the public interest. *Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 193 (3d Cir. 1990). Each of Plaintiff's claims – based upon (1) a failure to provide clean towels; (2) administration of the TB test shot; and (3) denial of access to the law library and the grievance process – are, as briefly explained below, insufficient to surpass these four prongs of consideration.

With respect to the likelihood that Plaintiff's claims would be successful on the merits, the Court notes that it is well established that a prison sentence "carries with it the circumspection or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). "Prison administrators . . . [are] accorded wide-ranging deference in the adoption and execution

of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Relatedly, while "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bounds v. Smith*, 430 U.S. 817, 828 (1977), this does not constitute "an abstract, freestanding right to a law library or legal assistance," *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  In order to assert a violation of this right, a prisoner must show that prison officials caused him past or imminent "actual injury." *See Lewis*, 518 U.S. at 348-55 and n.3; *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997).  "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.  "[M]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

Upon consideration of the claims at issue, the Court notes that Defendants provide evidence that the towels at the prison are washed regularly, (*see* Civ. No. 08-06088, Doc. No. 99, Att. 1, Ex. 1, ¶¶ 5-6; Civ. No. 10-04398, Doc. No. 54, Att. 1, Ex. 1, ¶¶ 5-6 (indicating that linens and clothes will be washed regularly)), and that prisoners are permitted to shower daily, (Civ. No. 08-06088, Doc. No. 99, Att. 1, Ex. 1, ¶ 7; Civ. No. 10-04398, Doc. No. 54, Att. 1, Ex. 1, ¶ 7; ("[Prisoners] may take showers every day");  *see also* Civ. No. 08-06088, Doc. No. 98; Civ. No. 10-04398, Doc. No. 53 ("Every day the undersigned has been asking Officer Murphy for clean towels and every day his request has been denied.")).  Moreover, far from retaliation and cruel and unusual punishment, the administration of the TB test shot is purportedly a general policy

employed for the safety of the other prisoners at the prison. (Civ. No. 08-06088, Defs. Brief, Doc. No. 99; Civ. No. 10-04398, Defs. Brief, Doc. No. 54). Finally, with regards to the denial of access to the law library and the grievance process, the Court notes that, at the time Plaintiff composed his motion he had been in custody a mere five days. (*See* Civ. No. 08-06088, Doc. No. 98, ¶ 1; Civ. No. 10-04398, Doc. No. 53, ¶ 1 (indicating that "On May 15th 2013 the undersigned was brought to Middlesex County Adult Correction Center" and specifying May 20, 2013 as the date of the motion)). This simply does not qualify as the type of delay that would warrant the imposition of a TRO.[2]

The other three factors also weigh against granting the relief Plaintiff seeks. With regards to the question of irreparable injury, while sores and chronic headaches (the alleged result of the lack of clean towels and the TB test shot, respectively) should not be carelessly accepted as standard for inmate health, the Court fails to see irreparable injury where Plaintiff has made no statements to the effect that other shower necessities, such as soap and water, are denied, or that the symptoms of the shot will not subside. Similarly, while continued failure to permit Plaintiff access to the law library and grievance forms may eventually qualify as egregious conduct, after so short a time in Corrections the Court simply does not find that irreparable injury will occur absent Plaintiff's removal or release. Finally, the Court finds that both the state and the public interest would be harmed should Plaintiff's requested relief be granted, as the integrity of the state judicial process, and possibly the public safety, would be compromised. Thus, the Court finds the merits of Plaintiff's petition for a TRO insufficient to warrant further consideration.

---

[2] Plaintiff, in his reply papers, notes that upon entering the prison a prisoner may be denied access to the law library for up to two weeks. (Civ. No. 08-06088, Doc. No. 100; Civ. No. 10-04398, Doc. No. 55). Assuming this is true, the Court still does not find this delay sufficient to trigger a violation of the right to court access.

Before concluding, Plaintiff is also reminded that, to the extent his TRO application requests release, "the exclusive federal remedy for an inmate challenging his confinement is a writ of habeas corpus." (Civ. No. 08-06088, Doc. No. 66; Civ. No. 10-04398, Doc. No. 32, February 10, 2012, Memorandum and Order (quoting two previous opinions in which the Court cited *Preiser v.* Rodriguez, 411 U.S 475 (1973)). These collateral attacks on state confinement will, therefore, likely continue as unsuccessful.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order, ((Civ. No. 08-06088, Doc. No. 98; Civ. No. 10-04398, Doc. No. 53), is denied. An appropriate Order accompanies this Opinion.

/s/Anne E. Thompson  
ANNE E. THOMPSON, U.S.D.J.

Dated:     June 27, 2013